## THE WAIANAE COMPANY *vs.* HAWAIIAN BELL TELEPHONE COMPANY.

### IN EQUITY. BEFORE JUDD, C.J.

### AUGUST, 1885.

Equity may enforce, by injunction, the negative part of an agreement, although the affirmative part cannot be specifically enforced by decree.

Demurrer sustained, to bill for injunction, for lack of allegation of irreparable injury.

An agreement for use of telephones held to be a license without consideration, revocable by the Telephone Company: and injunction to prevent removal of telephones and the bringing of suits at law for use thereof, refused.

### DECISION OF JUDD, C.J., ON DEMURRER.

This is a bill in equity for an injunction to restrain the defendant company from removing or stopping plaintiff's communication with and full service of a telephone, and from bringing actions at law for the plaintiff's use thereof. The bill alleges that on the 23d of March, 1883, the defendant corporation being desirous to establish a line of telephonic communication between its central office in Honolulu and the district of Waianae, applied to the plaintiff corporation to obtain its consent for establishing and extending such line over the plaintiff's

land in the said district, and assistance in money to defray the expenses thereof, and of men to assist in the labor thereof, and offered the plaintiff to place and keep two telephonic instruments upon the plaintiff's plantation at said Waianae, and to keep the same in communication with the defendant's system of telephones, and to make no charge for one of said instruments or for its use in connection with the defendant's telephonic system. The plaintiff accepted said offer and paid $500 to defendants in consideration thereof and performed its part of the contract, and has ever since paid for one of the said instruments at $10 a month, and no charge has been made for the use of the other instrument until recently and now. Defendant threatens to remove the one of said instruments heretofore furnished free of charge, and to stop plaintiff's communication therewith, unless plaintiff shall pay a monthly rental or sum for the use thereof, and rescinds the agreement by which one instrument was to be kept for plaintiff's use in connection with the telephonic system free of charge. The bill alleges that great inconvenience and harm would be caused by the removal of the instrument, and submits that the defendant should be restrained by injunction therefrom and from bringing actions or suits at law for the use hereafter.

The bill is demurred to generally for want of equity.

Mr. Hatch, for defendant: At the most, the defendant threatens to discontinue a voluntary service unless plaintiff pays $10 a month for it. If there is a contract to this effect, plaintiff can be recompensed by an action at law for its breach. The bill alleges merely inconvenience and harm, not irreparable damage. Courts of Equity should not be appealed to to establish a legal contract. By the telephone paid for the plaintiff is in connection with the telephone system.

A. S. Hartwell and E. Preston for the plaintiff: Equity has jurisdiction in this case to avoid a multiplicity of suits, as in case of failure to pay the tax of $10 per month, the defendant might bring an action every month. The defendant is a corporation with limited liability and unable to respond in

damages. Parties are compellable in equity to abide by their contracts. Kerr on Injunctions, Chap. 22; 3 Pomeroy's Eq. Jur., p. 444. The $10 per month which plaintiff may be compelled to pay is not the only damage. Plaintiff has given the right to carry wires over its land and has paid $500 to assist, and in consideration or by way of rent is to have one telephone free. The damage cannot be computed. Plaintiff has paid its money and defendant maintains its lines over plantiff's land for its own benefit. Should plaintiff sue for breach of contract or wait until defendant's charter expires and sue for the lump sum? There should be a decree for specific performance and a perpetual injunction to restrain the breach.

### BY THE COURT.

I have some difficulty in ascertaining the equitable principles upon which this bill can rest. The bill does not allege the pendency of a suit at law to determine the legal rights of the plaintiff. The injunction prayed for is not interlocutory and in aid of the legal right, having for its object the protection of property from irreparable damage pending the trial. The bill is not constructed upon this theory. The bill does not contain allegations showing that a multiplicity of suits is threatened or would result if the injunction is not granted.

But it seems that if the Telephone Company covenanted and agreed that the plaintiff should have the use of the instrument in question free of charge, it would be equivalent to a covenant not to remove the same.

Bispham in his Principles of Equity, Sec. 461, says: "The remedy by injunction to restrain the breach of negative covenants may be said to furnish the complement to relief by specific performance."

"An affirmative covenant is an agreement whereby a man undertakes that something shall be done, and upon the breach of such a covenant, and upon a proper case of equitable interference being made out, the remedy is by bill for specific performance. On the other hand, by a negative covenant, the covenantor promises that something shall not be done, and

therefore the relief appropriate to a breach of such a contract is an injunction."

"Injunctions to restrain the breach of negative covenants are issued when the contract and the threatened breach are clearly shown, and when the recovery of damages at law would furnish an inadequate redress. While the theory upon which this relief is based is that of preventing irreparable injury, yet the Court will not enter into nice discrimination as to the extent of the damage."

Kerr on Injunctions, p. 528, says: "There was until recently much doubt upon the authorities whether the Court would enforce by injunction the negative part of an agreement containing both affirmative and negative stipulations, unless the affirmative part of the agreement was of such a nature that it could be specifically enforced by decree."

The leading authority in favor of the power is *Lumley vs. Wagner,* 1 D. M. and G., 604, and Lord St. Leonards established the principle that the Court may enforce the negative part of an agreement by injunction, although the affirmative part is of such a nature that it cannot be specifically enforced by decree. Here the defendant agreed to sing at plaintiff's theatre and not to sing at any other theatre. The judge restrained her from singing at any other theatre than the plaintiff's, though he could not compel her to sing at plaintiff's theatre.

It seems to me that equity has jurisdiction to restrain the breach of the negative covenant not to remove the telephonic instrument.

But I think the bill is defective in the want of an allegation of irreparable injury, and in that the agreement or covenant not to remove the instrument is not clearly stated.

I will sustain the demurrer with leave to amend within ten days.

Honolulu, July 15, 1885.

### DECISION OF JUDD, C.J., ON THE MERITS.

I refer to my opinion on the demurrer for a statement of the bill. The amendments there suggested were made and the respondent has answered.

After hearing the proofs presented and arguments of counsel, I think the bill should be dismissed.

There was a contract made in writing between the parties on the 23d August, 1882, as follows:

"The undersigned hereby agree to pay to the Hawaiian Bell Telephone Company the sums set opposite to our names, being proportion towards building a telephone line from Honolulu to different places mentioned below; also, to pay a rental of $10 per month for the use of instruments which the Hawaiian Bell Telephone Company guarantees to keep in order, and will enable us to communicate at any time with anybody connected with the central system of the Hawaiian Bell Telephone Company.

Five hundred dollars, H. A. WIDEMANN, Waianae.

One hundred dollars, JAMES CAMPBELL, Honouliuli.

Two hundred dollars, M. P. ROBINSON, Waimano and Hoaeae.

Fifty dollars, H. E. WHITNEY & C. H. JUDD.

Seven hundred dollars, HAWAIIAN GOVERNMENT, per J. E. Bush, Minister of Interior, three stations, Ewa, Waianae and Waialua.

Two hundred dollars, J. I. DOWSETT, Stations Moanalua and Mikilua.

One hundred dollars, J. P. MENDONCA, Mokuleia Plains."

By this the "subscribers" engaged to pay a rental of $10 per month for use of instruments. This must mean for each station—for where more than one station is contemplated they are specified. The subscription of $500 by the Waianae Company was announced by Mr. Widemann, its president, at a meeting of the stockholders of the defendant corporation before it was voted to put up the Waianae and Waialua line. It was paid on May 23d, 1883. The construction of the line was begun in January, 1883, and finished in June. Messrs. C. O. Berger and H. A. Widemann, the only witnesses for plaintiff, say that

the arrangement or stipulation was that the Waianae Company should have two stations on the line, of which the one at the manager's house was to be rent free. But Mr. Berger says that this arrangement to have the use of one instrument free was made while the line was being constructed. It is therefore apparent that this concession was not a part of the original contract, as a proportional contribution to the expense of erecting the line, the Telephone Company to keep the instruments in order, and the subscribers to pay $10 per month for their use. The privilege of one instrument free was obtained at least five months later, and I cannot consider that it was a part of the original consideration. I much doubt if the rules of evidence would allow a written contract to be thus enlarged by parol. Moreover, I think this contract contemplating a continuance of the service for years is within the statute of frauds. There has been no part performance of this particular ingredient of the contract with knowledge on the part of defendant.

I find no evidence that this concession of one instrument free was acquiesced in or ratified by the defendant corporation. At the time it was alleged to have been made, Mr. Widemann was president, and Mr. Berger secretary, of both the plaintiff and defendant corporations. This requires that in thus dealing with themselves the utmost good faith should be used and shown. There was nothing on the minutes of the Telephone Company or on its record of instruments to show that the telephone in use at the manager's house was not to be paid for. Reasonably soon after the fact was discovered that it was to be rent free, it was disavowed by the defendant corporation.

Without discussing the remaining points made, my conclusion is that the use of telephone at the manager's house by the Waianae Company, free of rent, was a license without consideration, and hence revocable, and therefore dismiss the bill.

*A. S. Hartwell,* for plaintiff.
*F. M. Hatch,* for defendant.
Honolulu, August 8th, 1885.